**In re the Marriage of Ann McQuillan PERRI, Appellant–Petitioner,**

v.

**Frank A. PERRI, Appellee–Respondent.**

**No. 71A03–9704–CV–125.**

Court of Appeals of Indiana.

July 21, 1997.

Robert J. Palmer, E. Spencer Walton, Jr., May, Oberfell & Lorber, South Bend, for Appellant–Petitioner.

Thomas C. Sopko, Sopko & Firth, South Bend, for Appellee–Respondent.

## OPINION

STATON, Judge.

Ann McQuillan Perri appeals the provisional child support order entered in her dissolution of marriage from Frank Perri. Ann contests the trial court's determination of Frank's annual income. One issue is presented for review: whether the provisional child support order is clearly erroneous.

We affirm.

Ann and Frank married in 1983, in 1996 Ann filed for divorce. Ann has custody of the couple's two children. Both parents work outside the home. Frank earns $79,500 a year as a real estate developer and Ann is a stock broker earning an annual salary of $89,138. Under the provisional child support order Frank is to pay Ann $281.36 each week. Ann contends that Frank's child support obligation is too low because it fails to take into account income beyond Frank's salary which he earns from several partnerships.

Frank is employed with the Halladay Corporation, a real estate and developing company, and is a limited partner in 20 to 25 partnerships related to Halladay's operations. In 1995 one of the partnerships sold a piece of real estate, creating a large capital gain. Early in 1996, the partnership distributed $200,000 to Frank to cover the taxes from the capital gain realized by the property sale. The president of the Halladay Corporation is also the general partner in all of the partnerships in which Frank is a limited partner. The corporation president submitted a letter to the court stating that Frank's income in 1997 would be $79,500, and that Frank would not receive any distributions from any partnerships, nor any additional income from bonuses or commissions, beyond his salary.

Nonetheless, Ann contends that Frank's future income will match his '95 and '96 earnings. Ann prepared four child support worksheets, basing her different calculations on including different portions of the '95 capital gain and '96 distribution in her projections of Frank's future income. Ann's estimates of what Frank's weekly payments should be range from $487 to $822.

The trial court determined that the real estate sale was a one time event and so did not assume that Frank's future earnings would always include comparable proceeds. Instead, the court used Frank's monthly salary as the basis of his child support obligation. The court also ordered that Ann be given full access to all of Frank's business records, including the accounts of the Halladay Corporation, and allowed to designate an

accountant of her choice to monitor Frank's business dealings. If Frank should receive any unexpected income, whether a distribution from a partnership or bonus from the Halladay Corporation, it is to go into an escrow account for division along with the rest of the marital estate. Likewise, Ann's extra income from rental properties she controls is to be deposited in the parties' joint bank account pending final dissolution.

The trial court has wide discretion in ruling on child support, and its decision will be reversed only where it is clearly erroneous; that is, where the trial court's order is clearly against the logic and effect of all the facts and circumstances before the court. *Humphrey v. Woods*, 583 N.E.2d 133, 134 (Ind. 1991), *reh. denied.*

Issuance of a provisional child support order is authorized under IND. CODE § 31–1–11.5–7 (1996). The statute provides that "[t]he court may issue an order for temporary maintenance or support in such amounts and on such terms as may seem just and proper" and that "[t]he issuance of a provisional order shall be without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding." I.C. 31–11.5–7(d) and (g).

■ The goal of Indiana's Child Support Guidelines is to give children of divorced parents the same standard of living they would have enjoyed had the family remained intact, subject to the ability of parents to pay. Ind. Child Support Guideline One; *See also* Commentary to Guideline One and IND. CODE § 31–1–11.5–12(a)(2) and (4). In estimating what the future income of the parents will be "the trial court must consider the totality of the circumstances involved." *McCallister v. McCallister*, 488 N.E.2d 1147, 1152 (Ind.Ct.App.1986). The difficulties that irregular sources of income present in making these determinations is anticipated by our Child Support Guidelines, which provide in Comment 2(b) to Child Support Guideline 3:

b. Overtime, Commissions, Bonuses and Other forms of Irregular Income. There are numerous forms of income that are irregular or non-guaranteed which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.

\* \* \* \* \* \*

Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.

■ The trial court's decision is not clearly against the logic and effect of all the facts and circumstances before the court. Frank submitted a pay stub showing his annual salary to be $79,500. A letter from Frank's employer and the general partner of all the partnerships in which Frank is a limited partner stated that no further partnership distributions would be forthcoming. Ann simply argues that because money came into the marital estate from the real estate sale in 1995, the trial court should have presumed similar profits would be generated in each future year. The occurrence of an event in the past is no guarantee that it will be repeated in the future, and the evidence adduced at trial shows the real estate sale was a one time occurrence. Should Ann discover contrary evidence in her audits of Frank's finances, she may present that evidence at the final dissolution hearing.

Affirmed.

HOFFMAN and SULLIVAN, JJ., concur.