CYNTHIA S. PETER, APPELLANT AND CROSS-APPELLEE, V.
JAMES B. PETER, APPELLEE AND CROSS-APPELLANT.
637 N.W.2d 865

Filed January 11, 2002. No. S-00-1193.

John W. Ballew, Jr., of Ballew, Schneider & Covalt, for appellant.

James E. Gordon, of DeMars, Gordon, Olson, Shively & Zalewski, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

Cynthia S. Peter and James B. Peter were divorced in June 1998. In October 1999, Cynthia brought an action in Lancaster County District Court to modify the decree of dissolution, requesting an increase in James' child support obligation. In January 2000, James filed his own petition to modify, alleging that Cynthia had fraudulently failed to disclose certain assets at the time their marital estate was divided. The district court denied Cynthia's petition for modification and granted James' petition in part. Cynthia appealed, and James cross-appealed.

While the case was on appeal, James filed with the district court a motion to amend the bill of exceptions. The district court denied the motion. James also appeals the district court's refusal to grant his motion to amend the bill of exceptions.

## II. FACTUAL BACKGROUND

Cynthia and James were married in 1974 in Lincoln, Nebraska. The marriage was dissolved on June 10, 1998, when

the Lancaster County District Court entered a decree of dissolution, which incorporated the parties' property settlement, custody, and support agreement. In the decree, the district court granted legal and physical custody of the Peters' two children to Cynthia and ordered James to pay a total of $731 per month in child support.

On October 25, 1999, Cynthia filed a petition for modification of the decree of dissolution in Lancaster County District Court. She requested that the district court increase James' child support obligation and apply it retroactively.

On January 6, 2000, James filed his own petition to modify the decree of dissolution, alleging in part that Cynthia fraudulently failed to disclose a transition account she possessed at the time the parties entered into the property settlement agreement. James claimed the account, which was maintained through Cynthia's employer, Bryan Memorial Hospital, was unknown to him at the time the decree of dissolution was entered. James requested that the district court modify the decree to award him one-half the gross value of the account as of June 10, 1998.

On January 25, 2000, Cynthia filed an answer and cross-petition to James' petition to modify. In her cross-petition, Cynthia asked the district court to strike James' petition and award her attorney fees pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1995) on the basis that James filed his petition frivolously in order to harass her.

Since the entry of the decree, the parties have also had an ongoing disagreement over the sharing and exchanging of family photographs. The property settlement agreement specifically provided:

> The parties will cooperate in making photographs available for Husband to duplicate at his expense. To the extent there are some duplicates of these photographs, Husband may have them. Husband is also entitled to utilize photographic proofs for purposes of copying and shall return them to Wife after he has made copies.

On January 4, 2000, James filed a motion requesting the district court to order Cynthia to produce all photographs and negatives in her possession and to award James attorney fees. On January 27, the district court granted James' motion to produce

the photographs and negatives, but withheld any ruling on attorney fees pending the trial on the petitions to modify.

Trial was held on August 8, 2000. At trial, James presented evidence of what he alleged to be a mathematical error in the decree of dissolution and the property settlement agreement. James argued that a "transposition error" had occurred when the district court derived the money judgment designed to equalize the division of the Peters' marital estate from numbers found in appendix 2 of the property settlement agreement and then "carried over" a different, incorrect number into paragraph 11 of the property settlement agreement and paragraph 6 of the decree of dissolution. This error allegedly resulted in an overpayment to Cynthia of $2,256.

James also asserted in support of his petition to modify that he spent a sufficient amount of time with his children to create a joint physical custody arrangement, thereby justifying a reduction in his child support obligation from $731 per month to $120.42 per month.

The district court entered its order on November 13, 2000. With respect to Cynthia's petition to modify, the court found that due to the fluctuations in James' annual income, income averaging was an appropriate method under the Nebraska Child Support Guidelines for determining whether there was a material change in circumstances that would require a modification in child support. Utilizing income averaging, the court found that James' monthly child support obligation would increase from $731 per month to $760.27 per month. Since the variation was less than the "10 percent or more" standard at which a material change of circumstances is presumed under paragraph Q of the guidelines, the court denied Cynthia's petition to modify, finding there was not a material change of circumstances.

Concerning James' petition to modify, the district court found that Cynthia had failed to disclose the transition account maintained by her employer at the time of the division of the marital estate. The court determined that the "Gross Vested Transition Account Amount" at the time of the decree of dissolution was $7,640.94. The court ordered Cynthia to pay James $3,820.47, one-half of the gross amount of $7,640.94, with interest from June 21, 1998.

The district court also agreed with James that there was a mathematical error in the decree of dissolution. The court determined that Cynthia had received an overpayment of $2,256 as a result of the error and therefore ordered Cynthia to pay James that amount with interest from June 21, 1998.

The district court, however, found against James on his remaining claims. The court found that a joint custody arrangement did not exist and determined that both parties would be responsible for their respective attorney fees. Cynthia appealed the district court's order on November 16, 2000, and James cross-appealed.

On April 23, 2001, James filed with the district court a motion to amend the bill of exceptions. In his motion, James asked for leave to add a page to exhibit 7, a document describing Bryan Memorial Hospital's policies regarding transition accounts. Exhibit 7, as offered into evidence at trial, contained only the first and third pages of the document.

On May 11, 2001, the district court held a hearing on whether to amend the bill of exceptions. In its order, the court found that the second page was not part of the exhibit as offered at trial and determined it did not have jurisdiction to expand the trial record. James also appeals this determination.

### III. ASSIGNMENTS OF ERROR

Cynthia assigns, rephrased and renumbered, that the district court erred in (1) utilizing income averaging in determining whether a material change in circumstances had occurred, (2) determining that there was not a material change in circumstances and refusing to increase and retroactively apply James' child support obligation, (3) modifying the final decree of dissolution to correct a mathematical error, (4) entering a money judgment against Cynthia based on the finding that her transition account through Bryan Memorial Hospital was an asset that was not disclosed at the time the decree of dissolution was entered, and (5) failing to find under § 25-824 that James' petition for modification was frivolous and brought in bad faith.

In his cross-appeal, James assigns, rephrased and renumbered, that the district court erred in (1) failing to award attorney fees resulting from James' motion to require Cynthia to

produce family photographs, (2) finding that a joint custody arrangement did not exist, and (3) denying James' motion to amend the bill of exceptions.

Finally, James argues in his brief that this court should award him attorney fees on appeal resulting from his motion to amend the bill of exceptions.

## IV. STANDARD OF REVIEW

■ Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Wagner v. Wagner, ante* p. 924, 636 N.W.2d 879 (2001).

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

■ In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

## V. ANALYSIS

### 1. MODIFICATION OF CHILD SUPPORT

#### (a) Income Averaging

In her petition to modify, Cynthia claimed that a material change of circumstances had occurred with respect to James' income which required an increase in James' child support obligation. Prior to the divorce, James worked as an administrator at the Nebraska Heart Institute, where he received a salary in excess of $90,000 in 1995, and over $100,000 in 1996. In 1997, he began working on commission as a stockbroker. According to James' evidence, his gross annual earnings from commissions were $36,492 in 1997, $30,814.31 in 1998, $62,098.64 in 1999, and $43,470.38 as of July 15, 2000. James' and Cynthia's 1997 earnings were used to calculate James' child support obligation in the decree of dissolution entered June 10, 1998.

At the trial in August 2000, Cynthia contended that the district court should calculate child support based on the current earnings of the parties—either the 1999 actual earnings or the 2000 annualized earnings—in determining whether a modification of child support was warranted and, if so, the amount of any increase. Utilizing these income figures, Cynthia claimed James' child support obligation would increase from $731 per month to either $1,027.09 (1999 earnings) or $1,101.48 per month (2000 annualized earnings). Either calculation would exceed the "10 percent or more" standard at which a material change of circumstances is presumed under paragraph Q of the Nebraska Child Support Guidelines.

James, however, argued that due to fluctuations in his annual and monthly income, income averaging should be used to calculate any modification in child support. He proposed averaging his annual income from 1997, 1998, and 1999 to determine his average annual salary. Under James' calculations, his child support obligation would increase from $731 per month to $760.27 per month. The district court adopted James' calculations.

Paragraph Q of the Nebraska Child Support Guidelines states:

> Modification. Application of the child support guidelines which would result in a variation by 10 percent or more, upward or downward, of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

Neither party disputes that the district court's use of income averaging led to the court's finding that a variation by 10 percent or more did not exist, and ultimately to the determination that there was not a material change of circumstances. Therefore, in order to determine whether the district court abused its discretion in this finding, it is necessary to determine whether income averaging was appropriate given the facts of this case.

The Nebraska Child Support Guidelines specifically allow for income averaging in certain circumstances. Worksheet 1, the fifth footnote listed (footnote 5), states, "In the event of substantial fluctuations of annual earnings of either party during

the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent as shown in item 6. The calculation of the average income shall be attached to this worksheet."

This case presents the first opportunity for this court to apply the specific language of footnote 5. Under our de novo review, the question is whether James experienced "substantial fluctuations of annual earnings . . . during the immediate past 3 years."

■ We first note that "[a] party seeking to modify a child support order must show a material change of circumstances which occurred *subsequent* to the entry of the original decree or a previous modification which was not contemplated when the prior order was entered." (Emphasis supplied.) *Noonan v. Noonan*, 261 Neb. 552, 559, 624 N.W.2d 314, 321 (2001). Accord, *Hartman v. Hartman*, 261 Neb. 359, 622 N.W.2d 871 (2001); *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000). Footnote 5 does not alter this longstanding principle.

The Peters' decree of dissolution was entered in 1998. In determining whether a material change of circumstances occurred subsequent to the decree, the district court considered James' 1997 earnings which had previously been used to calculate child support in the 1998 decree. Since James' 1997 earnings were not subsequent to the entry of the decree, we find the district court abused its discretion in using those earnings to determine whether a material change of circumstances had occurred.

■ Our determination that the district court abused its discretion in considering James' 1997 earnings requires reversal, so it is not essential that we reach the merits of Cynthia's argument that income averaging was inappropriate on the facts of this case. However, an appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *Schafersman v. Agland Coop, ante* p. 215, 631 N.W.2d 862 (2001). Because the issue of income averaging is likely to recur upon remand, we proceed to address the issue.

According to the evidence provided by James, his income from 1998 to 2000 reveals this pattern: $30,814.31 in 1998; $62,098.64 in 1999; and approximately $80,000 in 2000 (projected estimate based on income as of July 15, 2000). There was

no evidence in the record that suggested James' current rate of earnings would decrease in the remaining months of 2000 or thereafter. In fact, James testified that his current employer had told him that after 5 or 6 years, he might achieve his previous level of compensation at the Nebraska Heart Institute. We find that James' annual earnings show a clear pattern of consistently increasing income.

Other courts have found that the use of income averaging is inappropriate when the obligor's income is consistently increasing. See, e.g., *Schaeffer v. Schaeffer*, 717 N.E.2d 915 (Ind. App. 1999); *Mahoney v. Mahoney*, 538 N.W.2d 189 (N.D. 1995). In *Schaeffer*, the court found that income averaging in such a situation gives the spouse, in this case James, a "windfall that deprives [his children] of 'the same standard of living [they] would have enjoyed had the family remained intact.' " See *id.* at 918 (quoting *Perri v. Perri*, 682 N.E.2d 579 (Ind. App. 1997)). We agree, and determine that it is not in the best interests of the children to allow income averaging when James' income is consistently increasing. "The paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child." *Noonan v. Noonan*, 261 Neb. 552, 567, 624 N.W.2d 314, 327 (2001). Accord *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001). Accordingly, we find that in this case it would be an abuse of discretion for a district court to use income averaging upon remand.

In calculating child support, we have stated that "as a general matter, the parties' current earnings are to be used." *Shiers v. Shiers*, 240 Neb. 856, 860, 485 N.W.2d 574, 577 (1992). We find no reason to deviate from this principle under our de novo review of this record and determine that on remand, the district court should use the parties' current earnings as found in this record in calculating James' child support obligation.

### (b) Retroactive Modification

Cynthia also argues that any increase in James' child support obligation should be retroactively applied. Normally, the initial determination regarding the retroactive application of a modification order is entrusted to the discretion of the trial court.

*Sears v. Larson,* 259 Neb. 760, 612 N.W.2d 474 (2000). However, the district court did not modify the child support obligation in its modification order, so "the determination regarding retroactivity is left to this court based on our de novo review of the record." *Noonan,* 261 Neb. at 567, 624 N.W.2d at 326.

■ "[T]he rule, absent equities to the contrary, should generally be that the modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification." *Id.* at 567, 624 N.W.2d at 326-27. James asserts that the equities of his current situation should prevent application of this rule. Specifically, James contends that retroactive modification would be unfair since he is not delinquent on his child support payments and is not trying to avoid his support obligations. James argues that an order to pay retroactive child support payments in addition to his current obligations would substantially burden his finances.

■ We view James' current circumstances in light of the best interests of the children.

> The paramount concern and question in determining child support, whether in the initial marital dissolution action or in proceedings for modification of a decree, is the best interests of the children. [Citations omitted.] The children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay.

*Pursley v. Pursley,* 261 Neb. 478, 482-83, 623 N.W.2d 651, 654 (2001). In *Riggs v. Riggs,* 261 Neb. 344, 356, 622 N.W.2d 861, 870 (2001), we recognized that "[t]here are circumstances, for example, when a noncustodial parent may not have the ability to pay retroactive support and meet current obligations."

James has been steadily employed since the time of the divorce. His earnings in 1999 exceeded $60,000, and his annualized 2000 earnings are approximately $80,000. Additionally, James testified that his current net worth is "approximately a half a million dollars." Based on our de novo review of the record, we determine that the equities of James' current situation do not warrant a deviation from the general rule enunciated by this court in *Riggs v. Riggs, supra,* and *Noonan v. Noonan,* 261 Neb. 552, 624 N.W.2d 314 (2001). We find that any increase in

James' child support obligation ordered by the district court should be retroactively applied to November 1, 1999, which is the first day of the month following the October 25, 1999, filing date of the application for modification.

### 2. MODIFICATION OF DECREE FOR "MATHEMATICAL ERROR"

 Cynthia argues in her next assignment of error that the district court erred in modifying the decree of dissolution to correct a mathematical error in the original money judgment designed to equalize the division of the Peters' marital estate. The district court entered the decree of dissolution in 1998, and neither James nor Cynthia appealed.

> [W]here a party to a divorce action voluntarily executes a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, provisions dealing with division of real and personal property, division of pension benefits, and division of stock will not thereafter be vacated or modified in the absence of fraud or gross inequity.

*Reinsch v. Reinsch*, 259 Neb. 564, 568-69, 611 N.W.2d 86, 90 (2000).

 James contends the mathematical error was "due to neglect on the part of the parties, counsel, and the court," and constituted fraud or gross inequity. Brief for appellee at 22. This court has previously determined that " 'what constitutes fraud is a matter of fact in each case.' " *Peters v. Woodmen Accident & Life Co.*, 170 Neb. 861, 870, 104 N.W.2d 490, 497 (1960). We have also stated that " '[f]raud may consist in words, acts, or the suppression of material facts with the intent to mislead and deceive.' " *Pasko v. Trela*, 153 Neb. 759, 762, 46 N.W.2d 139, 143 (1951).

A mathematical error occurring as a result of "neglect on the part of the parties, counsel, and the court" does not, under our de novo review of this record, constitute fraud. James had the opportunity to review the property settlement agreement and divorce decree, and he was represented by counsel throughout. Any alleged error was present in the decree from the outset. Furthermore, assuming the existence of the mathematical error, an error of $2,256 under this record does not constitute gross

inequity when viewed in light of the Peters' combined marital assets that totaled more than $600,000 at the time of the decree. In our de novo review of the record, we determine that James has failed to establish fraud or gross inequity. Having so determined, we find the district court abused its discretion in modifying the decree of dissolution to correct the mathematical error.

### 3. TRANSITION ACCOUNT

Cynthia also argues that the district court erred in its findings regarding the transition account maintained by her employer at the time of the Peters' divorce. She asserts that the transition account was disclosed to James at the time of the divorce.

As discussed previously, a property settlement agreement which has become final generally cannot be vacated or modified "in the absence of fraud or gross inequity." *Reinsch*, 259 Neb. at 569, 611 N.W.2d at 90. James contends that the district court was correct in modifying the decree of dissolution and awarding him one-half of the transition account because Cynthia's failure to disclose the account "constitute[d] fraud on her part." Brief for appellee at 21.

Our review of the record, however, shows that the existence of the transition account was not withheld from James. James received copies of Cynthia's pay stubs during pretrial discovery in the original divorce proceedings, and furthermore, Cynthia's pretrial memorandum identified "Current wage stubs" as an exhibit. These pay stubs listed the transition account and its current balance. In our de novo review, we find nothing supporting James' claim that Cynthia purposely tried to hide the existence of the account.

James alternatively argues that even if the transition account was disclosed, it was not a part of the original property settlement that was incorporated into the decree of dissolution. He cites *Buhrmann v. Buhrmann*, 231 Neb. 831, 835, 438 N.W.2d 481, 484 (1989), for the proposition that "a decree of dissolution which does not contain a complete adjudication of property rights of the parties does not operate as an absolute bar to the maintenance of an independent action by either of the parties involving such rights." *Buhrmann* does not apply here. James and Cynthia signed the property settlement agreement

which stated that "wife and husband completely waive all right, claim or interest in property of the other and in the estate of each other . . . and that said waiver was made with full knowledge and fair disclosure of the nature and extent of the respective property in the estate of each party." In our de novo review of the record, we determine the transition account was disclosed to James and covered by the property settlement agreement. Accordingly, we find that the district court abused its discretion in modifying the decree of dissolution to award James $3,820.47 based on the alleged value of the account.

## 4. ATTORNEY FEES

In her fifth assignment of error, Cynthia contends the trial court erred in failing to award her attorney fees pursuant to § 25-824. In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001); *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001).

Specifically, Cynthia argues that the district court erred in failing to find that James' petition to modify was frivolous under § 25-824(2). The term "frivolous," as used in § 25-824(2), connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Daily v. Board of Ed. of Morrill Cty.*, 256 Neb. 73, 588 N.W.2d 813 (1999). The fact that the district court found merit in some of James' contentions supports our finding that James' petition was not so wholly without merit as to be ridiculous. See *id.* at 94, 588 N.W.2d at 826 ("Daily's petition in error in the district court was certainly not frivolous. The fact that Daily prevailed in the district court is ample evidence of that fact"). The district court did not abuse its discretion in denying Cynthia's request for attorney fees.

## 5. JAMES' CROSS-APPEAL

James argues in his cross-appeal that the district court erred in not awarding attorney fees for expenses he incurred in obtaining the order regarding the production of family photographs. While James prevailed in his motion to produce the photographs, "we note in our de novo review of the record that the road to the . . .

hearing was not entirely smooth on the part of either party." *Riggs*, 261 Neb. at 358, 622 N.W.2d at 870. The record shows that both parties were dissatisfied with the manner in which the photographs were being exchanged. Furthermore, the district court heard and observed the parties at the hearing on James' motion, and we cannot say, based on this record, that the district court abused its discretion in not awarding attorney fees to James. See *id*.

We have also reviewed James' remaining assignments of error regarding the district court's failure to find the existence of a joint custody arrangement and its denial of his motion to amend the bill of exceptions. Upon our de novo review of the record, we determine that these assignments of error are without merit.

Additionally, James requests attorney fees on appeal resulting from his motion to amend the bill of exceptions. Having determined that James' assignment of error regarding the bill of exceptions is without merit, we likewise find that James is not entitled to attorney fees.

## VI. CONCLUSION

For the foregoing reasons, the order of the district court modifying the decree of dissolution is affirmed in part, and in part reversed, and remanded for further proceedings consistent with this opinion. In addition, Cynthia filed a motion for attorney fees incurred in this appeal pursuant to Neb. Ct. R. of Prac. 9F (rev. 2001). We grant this motion and award Cynthia attorney fees in the amount of $3,000 together with costs in the sum of $463.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

MCCORMACK, J., participating on briefs.