927 F.2d 330
 59 USLW 2529
 MSM FARMS, INC., a Nebraska corporation, Appellant,
v.
Robert M. SPIRE, Attorney General for the State of Nebraska
in his official capacity, Appellee,
Everett Holstein and Richard Bartek, Intervenors Below, Appellees.
 No. 90-1300.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1990.
Decided Feb. 27, 1991.
 
 William E. Morrow, Omaha, Neb., for appellant.
 Bernard L. Packett, Lincoln, Neb., for appellee.
 Before LAY, Chief Judge, FAGG, Circuit Judge, and LARSON,* Senior District Judge.
 LARSON, Senior District Judge.
 In 1982, Nebraska voters adopted article XII section 8 of the Nebraska Constitution through Nebraska's initiative and referendum process. The objective of the initiative was to prohibit non-family farm corporations from owning and operating Nebraska farm and ranch land. In 1988, plaintiff MSM Farms, a Nebraska corporation with unrelated shareholders, sought a declaration that article XII section 8 violates the equal protection and due process clauses of the fourteenth amendment of the United States Constitution. The district court[1] upheld the law. We affirm.I. EQUAL PROTECTION
 The equal protection clause of the fourteenth amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, Sec. 1. A corporation such as MSM Farms is a "person" under the equal protection clause. Pembina Consolidated Silver Mining & Milling Co. v. Pennsylvania, 125 U.S. 181, 189, 8 S.Ct. 737, 741, 31 L.Ed. 650 (1888). MSM argues article XII section 8 of the Nebraska Constitution denies it equal protection because the law's prohibition of non-family corporate farming is not rationally related to achieving any legitimate state purpose.
 We begin our analysis with the presumption that the law, which involves no suspect classifications or fundamental rights, is constitutional. See Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399 (1988); New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Social and economic measures, like the corporate farming prohibition in this case, run afoul of the equal protection clause only when "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Kadrmas, 487 U.S. at 463, 108 S.Ct. at 2489 (citing Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979)).
 States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.... [I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.
 Dukes, 427 U.S. at 303-04, 96 S.Ct. at 2517.
 In determining whether the people of Nebraska acted in a wholly arbitrary or irrational way in adopting the constitutional provision MSM has challenged, we look first to whether a legitimate state purpose exists for the law voters approved. Because the law was adopted through the initiative and referendum process,[2] there is little traditional legislative history regarding its purpose. See Omaha National Bank v. Spire, 223 Neb. 209, 389 N.W.2d 269, 279 (1986). Cf. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 465, 467, 468, 470, 101 S.Ct. 715, 724, 725, 726, 727, 66 L.Ed.2d 659 (1981) (citing legislative debates). Noting that the Nebraska law is similar to the statutory provisions adopted by eight other midwestern states, amici[3] contend Nebraska's objectives are similar to those explicitly set forth in the legislation of these other states.[4] Amici cite as an example Minn.Stat. Sec. 500.24(1), which states that
 it is in the interests of the state to encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society ... and the nuclear family.
 Minn.Stat. Sec. 500.24(1). See also S.D.Codified Laws Ann. Sec. 47-9A-1.
 Defendant-intervenors Everett Holstein and Richard Bartek, Nebraska farmers for over twenty years and supporters of the initiative, contend that the Nebraska law was intended to address the social and economic evils supporters perceived as related to corporate farming. According to evidence presented by defendant-intervenors, supporters of the Nebraska initiative believed that a rise in corporate farming in Nebraska would lead to the decline of the family farmer, who would be unable to compete fairly with the ability of corporations to raise capital and benefit from the tax laws. Supporters further maintained that corporate farming would lead to absentee landowners and tenant operation of farms, would adversely affect the rural social and economic structure, and would result in decreased stewardship and preservation of soil, water, and other natural resources. See generally Affidavit of George William Burrows, J.A. 267-274; Affidavit of Neil Oxton, J.A. 285-292; Affidavit of Martin Douglas Strange, J.A. 326-328, and attached studies prepared by the Center for Rural Affairs, J.A. 329-438.
 Defendant-intervenors presented reports prepared by the Agricultural Extension Services of the North Central Region[5] which reflect this country's historical reliance on family or dispersed farm ownership. See University of Illinois at Urbana-Champaign College of Agriculture Cooperative Extension Service, Special Publications 27 & 28, "Who Will Control U.S. Agriculture?" J.A. 196-232. These reports suggest that not only would family farmers find their situation vastly changed if concentrated or corporate farming were to prevail throughout the country, but that firms supplying the farmer/producer, firms marketing and processing farm products, rural communities, and consumers would also be affected. See, e.g., id., Special Publication 27 at 16-17, J.A. 220-221.
 In determining the purpose of the Nebraska initiative prohibiting non-family corporate farming, the district court turned to the language of the initiative petition itself. The court concluded that Nebraska voters sought to retain and promote family farm operations in Nebraska and sought to prevent a perceived threat that would stem from unrestricted corporate ownership of Nebraska farm land by preventing the concentration of farmland in the hands of non-family corporations. We agree with the district court that such a policy represents a legitimate state interest under the equal protection clause. Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 245, 104 S.Ct. 2321, 2331, 81 L.Ed.2d 186 (1984); Asbury Hospital v. Cass County, 326 U.S. 207, 214-15, 66 S.Ct. 61, 64-65, 90 L.Ed. 6 (1945). See State ex rel. Webster v. Lehndorff Geneva, Inc., 744 S.W.2d 801, 806 (Mo.1988); Omaha National Bank, 389 N.W.2d at 282-83.
 MSM nonetheless maintains that Nebraska's prohibition of non-family farm corporations must be struck down because the classifications created by the law are not rationally related to achieving the purpose of preserving the family farm. MSM contends the law is arbitrary because it does nothing to prevent the concentration of ownership of farm lands in corporations owned or controlled by families. MSM further contends the law is irrational because there were only a small percentage of corporate farms in Nebraska at the time voters approved the initiative restricting corporate ownership of farm and ranch land.
 MSM misapprehends the nature of our inquiry under the equal protection clause. It is up to the people of the State of Nebraska, not the courts, to weigh the evidence and decide on the wisdom and utility of measures adopted through the initiative and referendum process. See Clover Leaf Creamery, 449 U.S. at 469, 101 S.Ct. at 726. Whether in fact the law will meet its objectives is not the question: the equal protection clause is satisfied if the people of Nebraska could rationally have decided that prohibiting non-family farm corporations might protect an agriculture where families own and work the land. Id. at 466, 101 S.Ct. at 725; Hawaii Housing Authority, 467 U.S. at 242, 104 S.Ct. at 2330. See Kadrmas, 487 U.S. at 463, 108 S.Ct. at 2490.
 We agree with the district court that voters reasonably could have believed that by enacting the initiative in question they would be promoting family farm operations by preventing non-family corporate ownership of farmland. The district court properly observed that MSM's statistics on the percentage of non-family corporate farms in Nebraska shed little light on the question of whether family farming will be benefitted by excluding non-family corporate ownership of farm lands in the future. The reports presented by defendant-intervenors describe a trend toward larger and fewer farms, and state that "[i]f nothing is done now to arrest the forces already in motion, commercial agriculture will likely be increasingly concentrated in larger, more industrialized units." Special Report 28, Leaflet 3, J.A. at 211. Voters could reasonably believe that their initiative would help to curb this trend.
 MSM's complaint that the law permits family corporations to continue farming is equally unavailing. As amici effectively point out, the law provides an exception for family-owned and controlled corporations only where a family member resides on the farm or is actively engaged in the day to day labor and management of the farm. Defendant-intervenors contend that MSM as a corporation embodies many of the problems traditional family farmers perceive in corporate farming: neither of its two incorporators live on or near the tract of farmland MSM purchased in 1988, one had never been to see the land at all, and the other had only limited knowledge of its location and characteristics.
 In upholding a state statute which required an applicant for a pharmacy permit to be either a registered pharmacist or a corporation in which the majority of the stock was owned by registered pharmacists, the Supreme Court observed:
 A standing criticism of the use of corporations in business is that it causes such business to be owned by people who do not know anything about it. Argument has not been supposed to be necessary in order to show that the divorce between the power of control and knowledge is an evil.... The Constitution does not make it a condition of preventive legislation that it should work a perfect cure. It is enough if the questioned act has a manifest tendency to cure or at least to make the evil less.
 North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 166-67, 94 S.Ct. 407, 414, 38 L.Ed.2d 379 (1973) (quoting Liggett Co. v. Baldridge, 278 U.S. 105, 114-15, 49 S.Ct. 57, 60, 73 L.Ed. 204 (1928) (Holmes, J., dissenting)).
 
 
 1
 We have little difficulty concluding, based on all of the above, that MSM has failed to carry its "heavy burden" of showing that Nebraska's prohibition on non-family corporate farm ownership is arbitrary and irrational. See Kadrmas, 487 U.S. at 463, 108 S.Ct. at 2490.
 
 II. DUE PROCESS
 
 2
 The district court rejected MSM's due process clause challenge for the same reasons it found MSM's equal protection claim lacking. See Clover Leaf Creamery, 449 U.S. at 470 n. 12, 101 S.Ct. at 727 n. 12. MSM now casts its due process argument differently, contending on appeal that article XII section 8 offends the due process clause because it contains a provision requiring corporate owners of farm and ranch land to divest themselves of such land within two years after the state has obtained a court order requiring divestment.[6]
 
 
 3
 We generally do not pass upon questions which have not been raised and decided by the court below, Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 724 (8th Cir.1976), and we find no persuasive reason for doing so here, particularly when the issue which has been presented for the first time on appeal involves the constitutionality of a provision which has not yet been applied to MSM. See Asbury Hospital, 326 U.S. at 213-14, 66 S.Ct. at 64-65; Omaha National Bank, 389 N.W.2d at 284. We note, however, that MSM purchased its farm land well after voters had adopted the corporate farming prohibition,[7] and that under such circumstances a court might be hard-pressed to find that MSM had not been "afforded a fair opportunity to realize the value of the land" if divestiture is subsequently ordered. Asbury Hospital, 326 U.S. at 212, 66 S.Ct. at 64.
 
 III. CONCLUSION
 
 4
 The people of Nebraska have made a reasonable judgment that prohibiting non-family corporate farming serves the public interest in preserving an agriculture where families own and farm the land. It is not for the courts to second-guess the wisdom of this judgment. The equal protection clause is satisfied if the law adopted through the initiative process is rationally related to a legitimate state interest. The district court properly applied this test in evaluating the constitutionality of article XII, section 8 of the Nebraska Constitution, and its judgment upholding the law is hereby affirmed.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska
 
 
 [2]
 For an explanation of this process, see Omaha National Bank v. Spire, 223 Neb. 209, 389 N.W.2d 269, 273-74 (1986)
 
 
 [3]
 Both the State of North Dakota and the State of Iowa filed amicus curiae briefs in this case
 
 
 [4]
 See Iowa Code Secs. 172C.1-.15; Kansas Stat.Ann. Secs. 17-5902 to -5904; Minn.Stat. Sec. 500.24; Mo.Ann.Stat. Secs. 350.010-.030; N.D.Cent.Code Secs. 10-06-01 to -15; Oklahoma Stat. tit. 18 Secs. 951-56; S.D.Codified Laws Ann. Secs. 47-9A-1 to -23; and Wis.Stat. Sec. 182.001
 
 
 [5]
 The North Central Region includes the Agricultural Extension Services of Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, and Wisconsin, acting in cooperation with the U.S. Department of Agriculture
 
 
 [6]
 Article XII, section 8 provides in this regard that:
 The Secretary of State shall monitor corporate and syndicate agricultural land purchases and corporate and syndicate farming and ranching operations, and notify the Attorney General of any possible violations. If the Attorney General has reason to believe that a corporation or syndicate is violating this amendment, he or she shall commence an action in district court to enjoin any pending illegal land purchase, or livestock operation, or to force divestiture of land held in violation of this amendment. The court shall order any land held in violation of this amendment to be divested within two years. If land so ordered by the court has not been divested within two years, the court shall declare the land escheated to the State of Nebraska.
 
 
 [7]
 In fact, the law contains an exception for corporations which were engaged in farming or ranching operations on November 29, 1982, the effective date of the initiative. See Neb. Const. art. XII, Sec. 8; Omaha National Bank, 389 N.W.2d at 283