NORMA L. HALL ET AL., APPELLEES AND CROSS-APPELLANTS, V.
PROGRESS PIG, INC., APPELLANT AND CROSS-APPELLEE.
610 N.W. 2d 420

Filed May 12, 2000.    No. S-98-1190.

Leo A. Knowles and Terry Bauman White, of McGrath, North, Mullin & Kratz, P.C., for appellant.

Robert V. Broom, of Broom, Johnson & Clarkson, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and CARLSON, Judge.

WRIGHT, J.

## NATURE OF CASE

Norma L. Hall, David L. Hansen, Everett Holstein, and John K. Hansen (collectively referred to as "the plaintiffs") brought this action alleging that Progress Pig, Inc., is a nonfamily farm corporation owning land used in farming, in violation of article XII, § 8, of the Nebraska Constitution. The district court held that Progress Pig was in violation of article XII, § 8. Progress Pig has appealed, and the plaintiffs have cross-appealed.

## SCOPE OF REVIEW

■ Constitutional interpretation is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *Millennium Solutions v. Davis*, 258 Neb. 293, 603 N.W.2d 406 (1999).

■ In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998).

■ Although, generally, the rules governing the interpretation of legislative enactments apply to constitutional provisions adopted by the people, such constitutional provisions are to receive a broader and more liberal construction than statutes. *Id.*

## FACTS

In June 1993, the plaintiffs commenced this action in the district court for Otoe County, alleging that the operation of Progress Pig by its sole shareholder, David Zahn, violated article XII, § 8. The district court found that the plaintiffs did not have standing to pursue their claim and dismissed the petition. The plaintiffs appealed to this court, and we reversed the judgment of the district court and remanded the cause for resolution of the issues set forth in the plaintiffs' petition. See *Hall v. Progress Pig, Inc., supra.*

On remand, the district court entered judgment for the plaintiffs, holding that although Zahn's responsibilities constituted labor and management, those activities were not within the day-to-day labor and management exception contained in article XII, § 8(1)(A). The district court further held that article XII, § 8, did not violate the Equal Protection Clause of the U.S. Constitution and that Progress Pig lacked standing to challenge article XII, § 8, as void for vagueness because Progress Pig's conduct was clearly prohibited and it could not maintain that the provision was void as applied to the conduct of others.

The plaintiffs are residents of Nebraska who are engaged in farming. Hall, a resident of Elmwood, is engaged in general crop farming and livestock farming in western Cass County. David Hansen is a resident of Anselmo and farms in Custer County, growing corn, alfalfa, soybeans, and rye and raising livestock, including sheep and cattle. Holstein is a resident of Blair, who grows corn and soybeans and raises hogs. John Hansen is a resident of Lincoln, who grows corn and soybeans in Madison County. The plaintiffs commenced this action to enforce the provisions of article XII, § 8, commonly known as Initiative 300.

Zahn grew up in the Syracuse area and now resides on a farm approximately 3 miles from Progress Pig's hog confinement facility. He purchased the hog confinement facility now owned by Progress Pig in 1984, held the property in his name, and operated the facility as the "Dave Zahn Pig Farm." In 1986, Zahn hired Kenneth M. Wamstad to become the assistant manager of the hog confinement facility. Wamstad later agreed to become the manager as long as he could buy into the ownership of the operation. In order to accomplish this goal, Zahn incorporated the hog con-

finement facility as Progress Pig in 1990, but he always maintained his status as the majority shareholder. When Wamstad left the operation in 1994, Zahn became the sole shareholder.

Progress Pig is a "for-profit" corporation, organized under the laws of the State of Nebraska, and operates a hog confinement operation near Syracuse in Otoe County. It is a 500-sow operation producing 10,000 feeder hogs annually and employing 3 full-time persons. At trial, Zahn offered an exhibit which placed the operations of Progress Pig into nine categories: administration, finance, personnel, nutrition/feeding, genetics, herd health, operations, maintenance, and marketing. He then testified as to his involvement in these categories.

With regard to administration, Zahn is solely responsible for developing Progress Pig's business strategy and handling computer input, telephone calls, and mail. In finance, Zahn handles budgeting, meeting with accountants, bill paying, deposits, checkwriting, and computer input. He is also responsible for the financial data and the resultant cost analysis that is entered into Progress Pig's computer system.

Under the personnel category, Zahn is responsible for making payroll. He also participates in the management portion of the personnel function by hiring and firing employees, setting salaries, and conducting employee interviews.

With regard to the nutrition/feeding category, Zahn meets with a nutritionist on a semiannual basis for feed formulation and monitors herd efficiency with regard to feeding the hogs. In genetics, he meets with a geneticist annually, establishes breeding strategies, and negotiates with suppliers.

The herd health function involves working with a veterinarian on a semiannual basis. Based on the reports from the veterinarian, Zahn makes decisions with regard to vaccines and changes in the hogs' feed. In operations, he generates production reports for "pro-management" meetings that are conducted once every 3 months in Des Moines, Iowa. At these meetings, he participates with three other farms of similar size in Nebraska and six or seven comparatively sized farms in Iowa.

With respect to maintenance, Zahn is involved in repairs and remodeling. He is also responsible for marketing the hogs and, on a weekly basis, is involved with setting the prices for the hogs.

As time has progressed, Zahn's involvement in the physical chores has been eliminated and replaced by the above activities.

At trial, Zahn testified that his hired manager was responsible for managing and overseeing the chores and the tasks that are required to be done on a day-to-day basis in order to operate the farm. Additionally, Zahn stated that the manager is to report back to him on a weekly or biweekly basis. Douglas E. Beach, Zahn's manager at the time of trial, testified that he was responsible for overseeing the production, employees, and maintenance of Progress Pig. Zahn acknowledged that he did not participate in any of the activities necessary for the day-to-day operation of the farm except infrequently on an on-call basis. These activities were conducted by three onsite managers with additional part-time help.

Zahn is also a part owner of Prime Swine, another hog operation. Zahn is a paid consultant for Prime Swine and performs many of the same functions as he does for Progress Pig.

The plaintiffs' petition alleged that Progress Pig was being operated in violation of article XII, § 8, as a for-profit corporation engaged in hog farming, since the owner of more than 50 percent of the stock of the corporation neither resides on the farm nor actively engages in the day-to-day labor and management of the farm. It is undisputed that Zahn owns all the stock of the corporation and that at no time did Zahn reside on the land owned by the corporation.

On September 17, 1998, the district court held that Progress Pig was in violation of article XII, § 8; that article XII, § 8, did not violate the U.S. Constitution's Equal Protection Clause; and that Progress Pig did not have standing to challenge article XII, § 8, on the ground that it was void for vagueness. Progress Pig appealed, and the plaintiffs have cross-appealed.

## ASSIGNMENTS OF ERROR

Progress Pig assigns as error that the district court erred (1) in finding that labor and management activities conducted by Zahn did not come within the exception contained in article XII, § 8(1)(A); (2) in holding that common knowledge, rather than any evidence in the record, demonstrated that the size, noise, space, and feed differences between the sources of pork and poultry provided a rational basis for treating the two industries

differently; and (3) in holding that Progress Pig lacked standing to challenge article XII, § 8, as void for vagueness because Progress Pig's conduct was clearly prohibited by the amendment and that it could not maintain that the amendment is vague as applied to the conduct of others.

In their cross-appeal, the plaintiffs assert that the district court erred in determining that Zahn engaged in labor and management within the meaning of article XII, § 8, and in excluding certain evidence and the testimony of Martin Strange and David Hansen.

## ANALYSIS

Article XII of the Nebraska Constitution was amended by the addition of § 8 and its subsections as a result of the passage of Initiative 300 on November 2, 1982. Article XII, § 8(1), now states:

> No corporation or syndicate shall acquire, or otherwise obtain an interest, whether legal, beneficial, or otherwise, in any title to real estate used for farming or ranching in this state, or engage in farming or ranching.
>
> Corporation shall mean any corporation organized under the laws of any state of the United States or any country or any partnership of which such corporation is a partner.
>
> Farming or ranching shall mean (i) the cultivation of land for the production of agricultural crops, fruit, or other horticultural products, or (ii) the ownership, keeping or feeding of animals for the production of livestock or livestock products.
>
> . . . .
>
> These restrictions shall not apply to:
>
> (A) A family farm or ranch corporation. Family farm or ranch corporation shall mean a corporation engaged in farming or ranching or the ownership of agricultural land, in which the majority of the voting stock is held by members of a family, or a trust created for the benefit of a member of that family, related to one another within the fourth degree of kindred according to the rules of civil law, or their spouses, at least one of whom is a person residing on

or actively engaged in the day to day labor and management of the farm or ranch and none of whose stockholders are non-resident aliens and none of whose stockholders are corporations or partnerships, unless all of the stockholders or partners of such entities are persons related within the fourth degree of kindred to the majority of stockholders in the family farm corporation.

. . . .

(F) Agricultural land operated by a corporation for the purpose of raising poultry.

### LABOR AND MANAGEMENT ACTIVITIES

Progress Pig claims the district court erred in determining that the labor and management activities conducted by Zahn do not meet the requirements of article XII, § 8(1)(A). While the district court determined that Zahn was engaged in the labor and management of Progress Pig, the court concluded that Zahn was not actively engaged in the " 'day to day labor and management' " of the hog operation.

Progress Pig claims that Zahn's activities of maintaining, enhancing, and continuing the ongoing production of the operation were essential to the success of the corporation and that his ongoing labor and management activities regarding administration, finance, personnel, nutrition/feeding, genetics, herd health, operations, maintenance, and marketing involved him in the day-to-day affairs of the farm such that the requirements of article XII, § 8, were met.

■ This case requires us to examine the constitutional provision "actively engaged in the day to day labor and management of the farm or ranch." See Neb. Const. art. XII, § 8. Like statutes, constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and therefore construction is necessary. *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998). Constitutional interpretation is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *Millennium Solutions v. Davis*, 258 Neb. 293, 603 N.W.2d 406 (1999). Although, generally, the

rules governing the interpretation of legislative enactments apply to constitutional provisions adopted by the people, such constitutional provisions are to receive a broader and more liberal construction than statutes. *Hall v. Progress Pig, Inc., supra.*

In ascertaining the intent of a constitutional provision from its language, the words must be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests that they are used in a technical sense. *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997). The court may not supply any supposed omission, or add words to or take words from the provision as framed. It must be construed as a whole, and no part will be rejected as meaningless or surplusage, if it can be avoided. If the meaning is clear, the court will give to it the meaning that obviously would be accepted and understood by the layperson. *Id.*

Ultimately, the issue is whether Zahn, the sole shareholder of Progress Pig, was actively engaged in the day-to-day labor and management of the farm as required by article XII, § 8(1)(A). In our interpretation, the terms "actively engaged," "day to day," "labor," and "management" should be given their most natural and obvious meaning, since there is nothing to suggest that these terms are used in a technical sense. Every clause in a constitution has been inserted for a useful purpose and should receive even broader and more liberal construction than statutes. *Hall v. Progress Pig, Inc., supra.*

In the context of article XII, § 8, the phrase "day-to-day labor and management" refers to those activities that occur as a routine part of the farm or ranch operation. "Day-to-day" is defined as "occurring each day; daily." Webster's Encyclopedic Unabridged Dictionary of the English Language 370 (1989). "Active[ly]" means "constantly engaged." *Id.* at 15.

Webster's Encyclopedic Unabridged Dictionary of the English Language at 798 defines labor as "work, esp. of a hard or fatiguing kind; toil." Historically, the term "labor" has been associated with physical activity. See *Walsh v. International Fidelity Insurance Co.*, 55 Misc. 2d 565, 285 N.Y.S.2d 327 (1967). In *American Surety Co. of New York v. Stuart*, 151 S.W.2d 886, 887 (Tex. App. 1941), the court noted: " 'In legal significance labor implies toil; exertion producing weariness;

manual exertion of a toilsome nature.'" This would imply that labor involves physical activity which would be necessary in the day-to-day workings of the farm or ranch. Management is the "act or manner of managing." Webster's Encyclopedic Unabridged Dictionary of the English Language at 870. To manage means to "take charge or care of." *Id.* at 869.

The terms "labor" and "management," as they would commonly be interpreted, would encompass all the activities pertaining to a farm or ranch. Use of the terms "labor" and "management" in conjunction is meant to include all the activities that must be done in the operation of the particular farm or ranch. Thus, to be actively engaged in the day-to-day labor and management of the farm or ranch requires that such person be involved on a daily or routine basis in all aspects of the farm or ranch activities, be it labor or management. Labor would encompass the physical chores attendant to the farm, and management would encompass the mental and business activities of the operation.

This interpretation is consistent with the requirement that a shareholder either reside on the property or be actively engaged in the day-to-day labor and management of the farm. What labor and management activities will be required depends in large part on the type of farm or ranch operation that is being conducted.

A schedule prepared by Zahn's former manager, Wamstad, divides the operation of the farm into four divisions: farrowing, old nursery, prenursery, and grower-finisher. There are numerous chores to be completed daily in each division. As required by article XII, § 8, the shareholder must be "actively engaged" in both labor and management. Labor on the hog farm included farrowing activities, checking the condition of the hogs and sows, cleaning the pens, moving the hogs, administering medications, and various other activities. To be "actively engaged" as understood by the common layperson would require that a person actually conduct such activities on a daily basis, not designate such activities to other individuals.

The evidence established that in addition to Zahn's activities, there were numerous chores that had to be completed each day, as described by Wamstad. In the farrowing activities, the morning routine included walking through the "youngest room" and

checking for new litters, feeding various rooms of sows, recording information, checking temperatures, checking the physical condition of the sows, "creep feeding" as needed, administering sow mix, rechecking the sows that may be farrowing, sorting and processing the litters born the previous night, checking every new piglet for certain conditions, and administering medications and feed supplements. Zahn did none of these tasks, except when called upon on an infrequent basis.

At the time of trial, Zahn had a full-time manager, Beach, who lived on the site of Progress Pig, plus two assistant managers who oversaw the operation of the facility. Beach stated in his deposition, "I oversee the production and employees . . . . I'm just basically in charge of it all." Wamstad testified regarding the amount of time Zahn spent on the premises as far as running the facility day in and day out, that Zahn pretty well let Wamstad "take care of all the shots." He saw Zahn once a week regularly and, most of the time, two or three times a week. In addition, he talked to Zahn two or three times per week on the telephone.

The evidence shows that Zahn spent no time working with the hogs and approximately one-quarter of an hour per month cleaning or repairing buildings or working outside. Most of the functions that took place on the farm were those activities which involved the actual handling, feeding, and nurturing of the piglets. Zahn was not involved in this aspect of the farm, except for an infrequent or an on-call basis.

In *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997), we made it clear that article XII, § 8, read as a whole, reflected an intent to prohibit individuals who are not members of the same family or a Nebraska Indian tribe from forming and utilizing a corporation to own and operate farm or ranch land for their personal economic gain, other than for the specific uses set forth in § 8(1)(E) through (N). Being actively engaged in the day-to-day labor and management of the farm or ranch requires that the shareholder be involved in all aspects of the activity, whether it be labor or management, on a daily basis. Although the district court concluded that Zahn was engaged in labor and management, but not on an active, daily basis, we conclude that most, if not all, of Zahn's activities were involved in

the management end of the operation and that the amount of labor performed by Zahn in direct relationship to the hog-raising activities was minimal.

If the management and labor activities can be performed by a shareholder who does not reside on the farm or ranch, then absentee ownership and management is possible. It is the "absentee ownership and operation of farm and ranch land by a corporate entity which the plain language of article XII, § 8, prohibits." *Pig Pro Nonstock Co-op*, 253 Neb. at 91, 568 N.W.2d at 228. Article XII, § 8, requires that the shareholder must be on the farm or ranch, either by residing on the site or being actively engaged in the day-to-day labor and management.

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998). According to our review of the record, we conclude that Zahn is involved in minimal labor as that term is defined under the amendment. Article XII, § 8, requires that both labor and management activities be performed on an active, day-to-day basis. Zahn has not established that he has met that requirement.

## EQUAL PROTECTION

Progress Pig claims the district court erred in concluding that article XII, § 8, does not violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." According to article XII, § 8(1)(F), agricultural land operated by a corporation for the purpose of raising poultry is exempted from the limitations of corporate ownership imposed by the constitutional amendment. Progress Pig argues there is no evidence demonstrating that there is a rational basis for treating the pork and poultry industries differently. It claims that article XII, § 8, denies equal protection because the exemption of poultry pro-

ducers is not rationally related to achieving any legitimate state purpose.

As the district court correctly noted, the classification does not involve a fundamental right or a suspect class. When the classifications involved in the amendment do not create any suspect class or address any fundamental right, we apply only minimal scrutiny under the equal protection analysis. See *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972). Therefore, the standard of review is whether the amendment is rationally related to achieving any legitimate state purpose.

As such, we examine the evidence to determine if there is any rational basis for excluding agricultural land operated by a corporation for the purpose of raising poultry. Under this approach, a classification will be upheld where it is a rational means of promoting a legitimate government interest or purpose. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S. Ct. 1676, 84 L. Ed. 2d 751 (1985).

The burden is on Progress Pig to show that the amendment has no rational basis. In other words, a presumption of constitutionality can be overcome only if the party challenging its constitutionality negates every conceivable basis that might support the amendment.

In the area of economic regulation, states are accorded wide latitude, and in this economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the 14th Amendment. *New Orleans v. Dukes*, 427 U.S. 297, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976). Such social and economic regulations have the presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality. In other words, the 14th Amendment is violated only when the various treatment of different groups is so unrelated to the achievement of any combination of a legislative purpose that it can only be concluded that the passage of the amendment was irrational.

In the first federal constitutional challenge to article XII, § 8, we held that the amendment did not conflict with the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. See *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 389

N.W.2d 269 (1986). Obviously, Progress Pig cannot claim that the amendment violates the Nebraska Constitution. Conflict with existing articles or sections of a constitution can afford no logical basis for invalidating an initiative amendment. *Id.*, citing *Floridians Against Casino Takeover v. Let's Help*, 363 So. 2d 337 (Fla. 1978), *receded on other grounds, Fine v. Firestone*, 448 So. 2d 984 (Fla. 1984).

The matter was again addressed in *MSM Farms, Inc. v. Spire*, 927 F.2d 330 (8th Cir. 1991). There, MSM Farms sought a declaration that the amendment violated the Equal Protection and Due Process Clauses of the 14th Amendment. The U.S. District Court for the District of Nebraska upheld the law, and the corporation appealed. On appeal, the Eighth Circuit held that retaining and promoting family farm operations in Nebraska was a legitimate state interest and that the voters reasonably could have believed that enacting the initiative preventing nonfamily corporate ownership would promote family farm operations. Thus, the court determined that the provision did not violate the Equal Protection Clause of the 14th Amendment.

The Eighth Circuit noted that article XII, § 8, was similar to statutory provisions adopted by eight other midwestern states. The court had concluded that the Nebraska voters sought to retain and promote family farm operations in Nebraska and sought to prevent a perceived threat that would stem from unrestricted corporate ownership of Nebraska farmland by preventing the concentration of farmland in the hands of nonfamily corporations. The Eighth Circuit concluded that such a policy represented a legitimate state interest under the Equal Protection Clause. "Whether in fact the law will meet its objectives is not the question: the equal protection clause is satisfied if the people of Nebraska could rationally have decided that prohibiting non-family farm corporations might protect an agriculture where families own and work the land." (Emphasis omitted.) 927 F.2d at 333, citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S. Ct. 715, 66 L. Ed. 2d 659 (1981).

We conclude that the evidence supports a rational basis for exempting agricultural land operated by a corporation for the purpose of raising poultry. Progress Pig did not sustain its burden of proving that article XII, § 8, is not rationally related to

any state purpose and that there is no rational basis for differentiating between the poultry and hog industries. It failed to show that such classification was arbitrary or irrational. Its evidence suggested that both industries involve the production of farm animals on a confinement basis, but such evidence is not sufficient to show that there is no rational basis for the differentiation.

The plaintiffs offered exhibits 35 through 38 and the testimony of Strange and David Hansen. The purpose of the evidence was to show the differences between the hog and poultry industries. Although the district court excluded the evidence and found that common knowledge rather than evidence in the record demonstrated that the size, noise, space, and feed differences between pork and poultry provided a rational basis for treating the two industries differently, we conclude that the district court erred in not admitting the plaintiffs' evidence on this issue.

The plaintiffs' evidence showed that at the time Initiative 300 was passed, the poultry industry was almost entirely owned by corporations, while the hog industry was not. An offer of proof was made as to the testimony of Strange, the program director for the Center for Rural Affairs, a nonprofit corporation concerned with the economic and environmental issues of rural America:

> If allowed to testify Mr. Strange would testify as of 1982 it was widely recognized and common knowledge that the poultry industry was nearly completely controlled by vertically integrated corporations which contracted for production, reproducers who had little or no opportunity, market for poultry. These producers tended to be relatively large in scale. [T]he pork industry was still largely in the hands of family farmers, but that corporate farming was increasing in the pork industry as well. I also concluded that prohibiting corporate production of poultry in Nebraska would be [a]kin to merely granting a monopoly to existing poultry corporate farms, but that restrictions on corporate hog production might actually help support family farms.

The plaintiffs' evidence showed that the poultry industry was almost completely integrated by corporations at the time article

XII, § 8, was passed and that the hog industry was not. Exhibit 36 showed that by 1970, over 98 percent of all chickens were produced under contract to large, integrated corporations. Contractor control was most pervasive in broiler and egg contracts, and control extended into the day-to-day husbandry practices. At the opposite extreme, contractors for feed cattle and feeder hogs exerted little or no control over the production process, with nearly all contracts being nothing more than contracts for future delivery.

### Vagueness

Progress Pig claims it had standing to challenge article XII, § 8, as void for vagueness. The district court found that Progress Pig lacked standing to assert a claim of vagueness since it engaged in conduct which was clearly prohibited by the questioned provision and could not maintain that the statute was vague when applied to the conduct of others. The district court determined that Progress Pig had no standing because to have standing to assert a claim of vagueness, one must not have engaged in conduct which is clearly prohibited by the questioned amendment. See *State v. Irons*, 254 Neb. 18, 574 N.W.2d 144 (1998).

We have not previously addressed the issue of whether one can challenge an amendment to the Nebraska Constitution as being void for vagueness under the U.S. Constitution. However, the Court of Appeals of Texas recently entertained such a challenge. In *Rooms With A View v. Private Nat. Mortg.*, 7 S.W.3d 840 (Tex. App. 1999), the court was asked to determine whether a voter-approved state constitutional amendment was unconstitutionally vague. The court stated that in interpreting a constitutional provision, it would use the same guidelines as it would in interpreting statutes.

Like statutes, constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary. *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998).

In *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997), we concluded that the term "non-profit cor-

poration" was not specifically defined in article XII, § 8, of the Nebraska Constitution, and therefore its meaning was unclear and required judicial construction. Similarly, the phrase "actively engaged in the day to day labor and management" is not specifically defined and therefore requires judicial construction.

In order to clearly violate the terms of article XII, § 8, Zahn would have to have engaged in no labor and management activities of the farm. The issue is not whether Zahn engaged in any activity related to the labor and management of the farm, but whether Zahn was actively engaged in the day-to-day labor and management of the farm. Therefore, we conclude that Progress Pig has standing to assert a claim of vagueness and that the district court's determination that Progress Pig lacked standing was in error.

In a vagueness challenge to a state constitutional amendment, the amendment is not measured against the state's constitution, but by whether it satisfies the requirements of due process under the 14th Amendment. Challenges to state constitutional amendments must be measured against the federal Constitution and are therefore measured against the requirements of the 14th Amendment. Constitutional provisions must convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. See *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957). In addressing a vagueness challenge to a statute, which approach we now apply to a challenge to a constitutional amendment, we have stated that when a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: (1) adequate notice to citizens and (2) adequate standards to prevent arbitrary enforcement. *Daily v. Board of Ed. of Morrill Cty.*, 256 Neb. 73, 588 N.W.2d 813 (1999). Due process requires that an enactment supply a person of ordinary intelligence a reasonable opportunity to know what is prohibited and explicit standards for those who apply it. *Id.* A statute will not be deemed vague if it uses ordinary terms which find adequate interpretation in common usage and understanding. *Id.*

In our determination of whether the constitutional amendment is vague, we begin with the presumption that the amendment is constitutional. See *United States v. National Dairy Corp.*, 372 U.S. 29, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963). The party challenging the constitutional amendment bears the burden of establishing its unconstitutionality. *Rooms With A View v. Private Nat. Mortg.*, 7 S.W.3d 840 (Tex. App. 1999). Progress Pig bears the burden of establishing that article XII, § 8, is unconstitutionally vague. It must show that the amendment does not give fair notice of what is required for compliance with the amendment and that the amendment invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. See *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

We conclude that article XII, § 8, is not void for vagueness. Zahn is given fair notice of what is required for compliance, and such requirements do not invite arbitrary and discriminatory enforcement.

## CONCLUSION

For the reasons set forth herein, we conclude that Progress Pig is in violation of article XII, § 8, of the Nebraska Constitution, as Zahn is not actively engaged in the day-to-day labor and management of the operation. We also conclude that article XII, § 8, does not violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution and is not unconstitutionally vague.

Thus, we affirm the judgment of the district court in all respects except for its determination that Progress Pig did not have standing to challenge article XII, § 8, as being void for vagueness. That portion of the district court's judgment is reversed. We decline to further address the issues set forth in the plaintiffs' cross-appeal.

AFFIRMED IN PART, AND IN PART REVERSED.

STEPHAN, J., not participating.