JERALD W. MCDONALD, APPELLEE, V. GERALD E. MYRE
AND JOAN MORRISON-MYRE, APPELLANTS.

631 N.W.2d 125

Filed July 13, 2001.   No. S-00-201.

J. Bruce Teichman for appellants.

Robert E. Sullivan and Thomas J. Klein, of Haessler, Sullivan, Klein, Ltd., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

STEPHAN, J.

Gerald E. Myre and Joan Morrison-Myre appeal from an order of the district court for Saunders County which determined a disputed boundary line between their property and the adjoining property of Jerald W. McDonald. Finding no error, we affirm.

FACTS

The Myres and McDonald own adjoining lots in Woodcliff, a lakefront subdivision in Saunders County. McDonald purchased Lot S-1078 from the original developer of the subdivision in August 1995. At the time McDonald purchased Lot S-1078, Chuck Mangimelli occupied the adjoining Lot S-1077. Gerald Myre purchased Lot S-1077 from Mangimelli in July 1996. In June 1997, Gerald Myre executed a quitclaim deed conveying the property to himself and the then Joan Morrison, whom he

subsequently married. Lot S-1078 is located generally south of Lot S-1077.

McDonald filed an amended petition on December 1, 1998, asserting that the Myres committed a trespass by locating a propane tank on his property. McDonald requested an order directing the removal of the propane tank from Lot S-1078 and other equitable relief. In their answer filed on February 11, 1999, the Myres admitted ownership of the propane tank but asserted that it was located on Lot S-1077. In a cross-petition filed the same date, the Myres alleged title to the disputed real estate under the theory of adverse possession and requested that the court quiet title in their favor.

A bench trial was held on August 6, 1999. Prior to the presentation of evidence, counsel for the Myres orally informed the court that the answer may need to be amended and requested permission to raise any necessary matters at the conclusion of McDonald's case, which permission the court granted. In opening statements, counsel for the Myres further informed the court as follows:

[COUNSEL]: Your Honor, I believe that this — this matter as a matter of case law involves a boundary dispute. And in order to — I believe, if I can be of assistance here, the Petition is a Petition in Ejectment and when a Petition is filed in ejectment and an Answer is filed, a boundary dispute comes into play.

I may as well do this now. The defendant filed an Answer and Counterclaim, and under the Answer and Counterclaim, we filed an action in quiet title. I think the counterclaim is captioned the Cross Petition under Rush Creek Land and Livestock. The Supreme Court of Nebraska in 1998 decided that even if the pleadings do not accurately depict what is going on, and they do not as a matter of law, that the court will consider the case a case under 34 — Nebr. [sic] Rev. Stat. 34-301, which comes into play as a boundary dispute. Your Honor, if I may approach, I have copies of the Rush Creek Land and Livestock case.

What we will show, Your Honor, is that — is that the defendants purchased the property that's Lot [S-]1077,

which lies northerly, and the reason I say northerly instead of north of, I don't think it is true north of Lot [S-]1078, and they relied upon the boundaries that were historical and established as set by the developer.

As such, these boundaries would indicate that the tank that the plaintiffs — plaintiff has asserted lies on the — that the plaintiff alleges is trespassing on his land lies north of the boundary lines, and, therefore, the defendants are not trespassing.

Several witnesses testified at the trial. Louis Austin, the Saunders County surveyor, testified on behalf of McDonald. Austin prepared a survey of Lot S-1078 at the request of McDonald on July 30, 1996. This survey established that the propane tank was located on Lot S-1078, as alleged by McDonald.

On cross-examination, Austin testified that John Poehling was the developer of the Woodcliff subdivision and was originally the owner of all of the lots in the subdivision. The lots at Woodcliff were surveyed at one time, and a copy of the platted survey map was filed in Saunders County. Austin testified that at the time he conducted the survey of Lot S-1078 for McDonald, he saw a metal post with the lot identifier number "S 1078" near the shed in the northwest corner of Lot S-1078. Austin had been to the Woodcliff subdivision 80 to 90 times and testified that similar posts were at many locations in Woodcliff. He testified that he did not know who put the metal post in and that the post did not influence the establishment of the lot line by surveying. On recross, Austin stated that a surveyor could not rely on the metal post as a monument, but that it may be collateral evidence.

McDonald testified that after the survey showed the propane tank was located on his property, he initially asked Mangimelli, who then occupied Lot S-1077, to remove it. Subsequently, when the Myres moved onto Lot S-1077, McDonald requested that they remove the propane tank. On cross-examination, McDonald admitted that the metal post was in its present location at the time he purchased Lot S-1078. McDonald further testified that there was a wooden fence located on Lot S-1078 at the time of his purchase. Other testimony indicated that the fence was directly aligned with the metal post. McDonald

offered no testimony regarding the representations, if any, made to him regarding the metal post and the boundary line between the properties at the time of his purchase.

The court overruled the Myres' motion for a directed verdict at the conclusion of McDonald's case in chief. The Myres made no motion at the close of McDonald's evidence to amend their answer or counterclaim.

Patrick Poehling (Poehling), the son of the original Woodcliff developer, was called as a witness by the Myres. Poehling worked with his father in the Woodcliff subdivision for many years. According to Poehling, the Woodcliff subdivision was platted and filed with the county in 1978. The original surveyor put pins or rebar on the four corners of each lot, and the developer would often put wood or metal posts on top of the rebar. The posts were used to designate the location of the lot line and the address of the particular lot. Of 445 platted lots at Woodcliff, there were 200 to 250 metal posts.

Poehling testified that he was present 200 to 250 times when lots were shown to buyers and when lots were sold. Although he was the listing agent for the 1995 sale of Lot S-1078 to McDonald, Poehling could not recall showing the property to McDonald and did not know if he had pointed out the lot line to McDonald at that time. Poehling also did not recall whether he showed Lot S-1077 to Mangimelli. He did testify, however, that he showed Lot S-1078 more than five times to prospective purchasers and had occasion to point out the lot boundaries. According to Poehling, he would show prospective purchasers the markers or posts and say he believed that such markers identified the property line but that a survey would be required to prove it. On cross-examination, he testified that property in the subdivision was sold according to the survey platted and recorded in Saunders County, not according to markers on the property. He further stated that his general practice was to tell buyers that if they had a property line question, they should have a survey done.

In 1987, Poehling helped install the water system at Woodcliff. At that time, owners of the lots were asked where they wanted their "curb box" located. A curb box is the pipe attached to the main water line which is used to regulate the

flow of water to an individual home. The location of each curb box was recorded in a book maintained by the developer. According to the book, the Lot S-1077 curb box is 5 feet north of the south property line of that lot. Poehling testified that he measured from the metal post identifying Lot S-1078 and located the curb box approximately 5 feet from this marker. On cross-examination, he clarified that the curb box book was not meant to establish the property line, but was meant only to provide a record of the location of the curb box.

Gerald Myre testified that he did not see the plat when he purchased Lot S-1077 from Mangimelli. At the time of purchase, a real estate agent showed Myre the metal post identifying Lot S-1078 and represented that the line from that post to the seawall was the property line. According to Gerald Myre, the south border of his seawall is directly east of the post. Gerald Myre considered the post to be his south boundary line and stated that lots without such an identifying post are the exception in his area of the subdivision. He further testified that if Austin's survey is the correct representation of the boundary line, he will lose access and egress to his driveway and garage. On cross-examination, Gerald Myre admitted that he had a survey conducted in 1997 which showed the lot line very close to that established in Austin's survey. He further stated that his 1997 quitclaim deed conveyed Lot S-1077 as "surveyed, platted and recorded."

The court conducted a site visit on September 9, 1999. Thereafter, on September 21, the court entered an order requiring the Myres to remove the propane tank. In its order, the court found that the matter was "essentially a boundary dispute" which is tried as an action in equity pursuant to Neb. Rev. Stat. § 34-301 (Reissue 1998). The court dismissed the Myres' cross-petition alleging adverse possession after finding insufficient evidence to support the claim.

In setting forth the arguments of the parties, the court noted that the Myres relied upon a marker "which was apparently placed on the lot by the developer," while McDonald relied upon a professional survey. The court found that the lot line is as established in the survey and directed the Myres to remove the tank within 90 days. In a motion for new trial filed on September 28, 1999, the Myres alleged that the court failed to determine the

matter pursuant to the common developer doctrine set forth in *Phillippe v. Horns*, 188 Neb. 304, 196 N.W.2d 382 (1972). This motion was overruled in an October 12, 1999, journal entry that was not file stamped. On October 14, the Myres filed a motion to amend their answer and attached an amended answer and counterclaim. The amended answer raised a number of affirmative defenses, including acquiescence, mutual recognition, estoppel, and the establishment of a common boundary by a common grantor. The proposed amended counterclaim was based on § 34-301 and generally alleged that the metal post was erected by the developer to mark the property lines and that purchasers relied upon such posts as the boundary lines. McDonald objected to the motion to amend the answer and counterclaim. On November 3, the district court overruled the motion to amend.

The Myres appealed to the Court of Appeals on November 9, 1999. That court dismissed the appeal as premature for lack of a final order due to the October 12 order that was not file stamped. The Myres thereafter filed a motion to file stamp the October 12 order, which the district court subsequently granted in a new order dated February 7, 2000. The Myres then filed this timely appeal, which we removed to our docket pursuant to our power to regulate the caseloads of the appellate courts of this state.

During the pendency of this appeal, the Myres filed a "Verified Motion for Issuance of Citation for Contempt," alleging that McDonald violated a supersedeas bond and order by pulling out the boundary marker, pulling out and cementing in waterlines, shutting off the Myres' gasline, and constructing a fence across the Myres' property. McDonald filed a verified response denying the material allegations of the motion. By order of the court, the motion was held in abeyance until final disposition of the appeal.

### ASSIGNMENTS OF ERROR
The Myres assign, restated, that the trial court erred in (1) holding that the survey controlled over a boundary line fixed by monuments provided by the common grantor of a subdivided lot; (2) failing to adjudicate the case according to the evidence presented, even if such evidence was at variance with the pleadings, when no objection was made; or (3) failing to permit the filing of an amended answer and counterclaim to conform to the evidence.

## STANDARD OF REVIEW

■ In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000); *Anderson v. Cumpston*, 258 Neb. 891, 606 N.W.2d 817 (2000).

■ A decision to grant or deny an amendment to a pleading rests in the discretion of the trial court. *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999); *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998).

## ANALYSIS

All of the assignments of error asserted by the Myres rest upon their claim that this case is controlled by *Phillippe v. Horns*, 188 Neb. 304, 196 N.W.2d 382 (1972). *Phillippe* involved a boundary line dispute between adjoining property owners in a residential subdivision. The evidence in that case established that the county surveyor had surveyed the subdivision lots in 1960 and, at that time, marked the lot corners with wooden stakes and iron pipes. When the original developer subsequently conveyed lots to the plaintiffs and the defendants, the boundaries of the particular lots at issue were pointed out by referencing the iron pipes. Emphasizing that the evidence revealed that "at the time of the purchases it was the intention of the common grantor and the grantees that such stakes marked the common boundary line of the lots on the ground purchased by the plaintiffs and the defendants," *id.* at 306-07, 196 N.W.2d at 384, we held that

> [w]here conveyances from a common grantor to adjoining landowners describe the premises conveyed by lot numbers, but adjoining owners purchase with reference to a boundary line then marked on the ground, the boundary line, as marked on the ground by the common grantor, is binding upon such adjoining landowners and all persons claiming under them irrespective of the length of time which has elapsed thereafter[,]

*id.* at 307, 196 N.W.2d at 384.

The material facts in this case are distinguishable from those presented in *Phillippe v. Horns, supra.* The rule announced in *Phillippe,* by its very terms, applies to those situations in which a common grantor and both adjoining landowners reference specific monuments and intend such monuments to establish the boundary line. Although Gerald Myre testified that a "listing agent" of the real estate agency represented to him at the time of his purchase that the metal post established the boundary line between Lots S-1077 and S-1078, the record reveals that the Myres received title to Lot S-1077 from Mangimelli, an owner other than the original developer. No evidence was offered relating to representations made by the developer to Mangimelli, the Myres' predecessor in title, with respect to the boundary line. In addition, while McDonald acknowledged that he was aware of the metal post at the time of his purchase, no testimony was elicited from him relating to the grantor's representations at the time of McDonald's purchase. Moreover, and perhaps most important, the undisputed testimony of Poehling established that it was the developer's general practice to inform prospective purchasers that any markers may indicate the boundary line, but that a survey would be necessary to conclusively establish the line. Poehling further testified that lots were sold according to the platted survey, not according to any markers on the property. Thus, assuming without deciding that the existence of a single marker on Lot S-1078 could establish a boundary, the evidence presented at trial clearly fails to establish a conveyance by a common grantor to adjoining landowners with reference to a marked and binding boundary line.

On these facts, the rule of *Phillippe v. Horns,* 188 Neb. 304, 196 N.W.2d 382 (1972), is clearly inapplicable. Accordingly, the district court did not err in not applying the common grantor doctrine. Moreover, because the Myres moved to amend their pleadings only to conform with *Phillippe,* the district court did not abuse its discretion in denying the motion.

Based upon our de novo review of the record, we agree with the district court that the Myres failed to establish title by adverse possession of the disputed area and that the boundary between Lots S-1077 and S-1078 is that shown on the survey.

The record further establishes that the propane tank was situated on McDonald's property and that McDonald was entitled to an order directing the Myres to remove it.

The Myres' motion for contempt raises disputed factual issues which were not resolved by the district court because of the pendency of this appeal. To the extent they are not rendered moot by our affirmance of the judgment of the district court, the issues raised in the contempt motion should be resolved by the district court upon remand. Accordingly, we deny the motion without prejudice.

## CONCLUSION

For the reasons stated herein, the orders of the district court establishing the disputed boundary, directing the removal of the propane tank from McDonald's property, and denying the Myres' motions to amend and for new trial are affirmed. The Myres' verified motion for contempt is denied without prejudice.

JUDGMENT AFFIRMED.

MOTION FOR CONTEMPT DENIED WITHOUT PREJUDICE.

MCCORMACK, J., not participating.