IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WINSICK V. WINSICK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KERI WINSICK, NOW KNOWN AS KERI BANKS, APPELLANT,

V.

GLENN WINSICK, APPELLEE.

Filed January 5, 2016.    No. A-15-209.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Karen S. Nelson, of Schirber & Wagner, L.L.P., for appellant.

Grant A. Forsberg, of Forsberg Law, P.C., L.L.O., for appellee.

IRWIN, PIRTLE, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Keri Winsick (now known as Keri Banks) appeals from an order of the district court for Sarpy County which modified the parenting plan she and Glenn Winsick had previously agreed to abide by concerning custody and parenting time with their two minor daughters. On appeal, Keri challenges the district court's finding that a material change in circumstances had occurred warranting a change in the parties' parenting plan. Keri's assertions on appeal focus exclusively on the court's decision to increase Glenn's parenting time by granting him an additional six hours with the girls every other Sunday afternoon.

Upon our de novo review of the record, we find no merit to Keri's assertions on appeal. Accordingly, we affirm the district court's order modifying the parties' parenting plan.

## II. BACKGROUND

The parenting plan at issue in these proceedings concerns Keri and Glenn's daughters, Lakin, born in 2003, and Azlee, born in 2007. Keri and Glenn were married in August 2000 and the decree dissolving their marriage and incorporating their agreed upon parenting plan was filed on June 7, 2010.

### 1. PROCEDURAL HISTORY

In the decree of dissolution dissolving Keri and Glenn's marriage, the court adopted the provisions of a custody and parenting plan agreed to by the parties. As a part of this parenting plan, Keri was awarded physical custody of the girls and the parties were to share joint legal custody. Glenn was granted regular parenting time every other Wednesday after school through Friday morning at 9:00. During the alternate weeks, Glenn was granted parenting time from Thursday after school through Sunday at noon. Keri and Glenn agreed that if either of them was unable to care for the girls for four or more hours during their respective parenting times, they would extend to the other parent the opportunity for additional parenting time. This provision is referred to in the parenting plan as "The Right of First Refusal."

On March 17, 2014, almost four years after the decree of dissolution was filed, Keri filed a complaint for modification of the decree. In the complaint, she alleged that a material change in circumstances had occurred since the entry of the decree and parenting plan. Specifically, she alleged that she had gotten remarried and that since her remarriage, Glenn had made disparaging remarks to the girls about her and her family and that he had failed to foster a safe, secure, and loving environment. Keri requested that the parenting plan be modified such that she be awarded sole legal custody of the girls, that Glenn's parenting time be decreased to alternating weekends and one overnight per week, and that the right of first refusal be removed from the plan.

On April 1, 2014, Glenn filed an answer and cross-complaint for modification of the original decree. Glenn denied Keri's allegations that he was in some way trying to harm her relationship with the girls or that he was not providing the girls with a loving and safe environment; however, he agreed that there had been a material change in circumstances warranting a change in the parenting plan. He alleged that the material change in circumstances was Keri's marriage to an "aggressive" individual who had threatened and harassed Glenn in front of the girls. He requested that the parties be awarded joint physical and legal custody of the girls and that he be granted physical possession of the girls 50 percent of the time.

Prior to a hearing on Keri's and Glenn's complaints to modify the decree and parenting plan, the district court ordered them to attend mediation. As a result of the mediation, Keri and Glenn agreed to certain modifications of the parenting plan. These modifications were titled "Remediated Parenting Plan" and were submitted to the court. Essentially, the parties agreed to slight adjustments to the holiday parenting time schedule and to changes to their communication manner and style. However, they did not agree about increasing Glenn's parenting time or about changing or removing the right of first refusal.

A hearing was held in January 2015. At the start of this hearing, Keri informed the court that, due to the results of the mediation, she was dismissing her complaint to modify the parenting plan. The hearing then proceeded only as to Glenn's cross-complaint for modification. By the time of this hearing, Glenn was really only requesting one additional overnight of parenting time every

two weeks. Specifically, he wanted his every other weekend parenting time extended so that it ended on Monday morning rather than on Sunday at noon.

## 2. GLENN'S TESTIMONY

At the hearing, Glenn testified that he currently lives in a five bedroom home with his girlfriend, Teresa. Teresa has two children from a prior relationship and, just like Lakin and Azlee, these children live with them part of the time. Glenn works as an electrician and has been with his current employer since January 2007.

Glenn testified that he and Keri cooperate and communicate "relatively well." In fact, he and Keri still attend church together with the girls and, until recently, they always attended parent-teacher conferences together. Shortly after the decree, Glenn and Keri agreed to some modifications of the parenting plan, including adding one-on-one parenting time with the girls every other Sunday. During this parenting time, Glenn would have one child and Keri would have the other child for a few hours.

However, since Keri's marriage to Chris Banks, Keri and Glenn's relationship has somewhat deteriorated. Glenn testified that there has been a great deal of conflict between him and Chris. He believes Chris to be aggressive and is concerned about his children being alone with Chris when Keri is not present. Glenn testified about two separate situations that resulted in a verbal altercation between Glenn and Chris. Both of these situations occurred in the presence of the girls.

Glenn indicated that since Keri's remarriage, she has decided to discontinue the one-on-one parenting time every other Sunday and has failed to offer him parenting time when she is unavailable. Instead, she often leaves the girls with Chris.

Glenn testified that his proposed parenting plan would help to minimize the conflict between the two households because if his weekend parenting time was extended until Monday morning, most of the drop-offs and pick-ups could be done at the girls' school, rather than at either Glenn's or Keri's home. His interactions with Keri and Chris would then be greatly reduced. Glenn indicated a desire to make the current situation better. In fact, he testified that he actively participates with the girls' therapy and has changed his behavior based on his discussions with the girls' therapist.

## 3. KERI'S TESTIMONY

Keri testified that she currently lives with her husband, Chris, and Lakin and Azlee. In addition, sometimes, her husband's children from a previous relationship stay with them. She is currently employed as a medical technician and is retired from the military.

Keri testified that she and Glenn have "communication issues." She also testified that Chris does not have any issues with Glenn, but that Glenn "does not get along with [Chris]." Keri believes that, as a result of the animosity Glenn has for Chris, he has not been supportive of her relationship with the girls. She testified that both Glenn and his girlfriend, Teresa, have made negative comments to the girls about Keri and Chris and that these comments have started to negatively affect the girls. Keri opposed Glenn having any additional parenting time.

However, Keri admitted that Glenn is a very involved parent who loves the girls. She testified that Glenn is "the best dad that he can be."

Keri testified that she believes the right of first refusal in the original parenting plan works fine the way it was written, but she also testified that she believed it to be "useless" now that both she and Glenn have significant others who assist them in caring for the girls. She indicated that if she is going to be gone for any length of time, she would prefer to just leave the girls with Chris.

## 4. DISTRICT COURT ORDER

After the trial, the district court entered an order modifying the parenting plan by adjusting the right of first refusal such that it now only applies when the possessory parent is unavailable to care for the girls overnight and by extending Glenn's every other weekend parenting time as follows:

> Effective with this order, [Glenn's every other weekend] parenting time shall begin Thursday after the children are released from school or after the conclusion of [Glenn]'s work day, whichever is earlier, and shall end on Sunday at 6:00 p.m. If, however, the minor children do not have school on the following Monday, [Glenn]'s parenting time shall extend until 8:00 a.m. on Monday morning.

In making these modifications, the court found

> [A] material change in circumstances does exist affecting the best interests of the children. Specifically, the Court finds that, in addition to the agreed-upon adjustments to the parties' parenting plan, additional parenting time should be provided to [Glenn] so as to allow him to have full and complete weekends with the minor children on a regular basis. The Court further finds that, based on the evolving needs of the children, the right of first refusal should be adjusted.

After the court entered its order, Keri filed both a motion for new trial and a motion to alter or amend the judgment. In each motion she challenged the court's finding that there had been a material change in circumstances warranting an increase in Glenn's parenting time. She first argued that the court could not rely on the minor mediated changes to the parenting plan to support its finding that there had been a material change in circumstances warranting further, more significant, changes. Next, she argued that there was simply no evidence to establish any change in circumstances which would warrant increasing Glenn's visitation time. The district court ultimately denied both of Keri's motions but, at the hearing on the motions, the court clarified its modification order by explaining, "I, actually, in my order, did not rely on the agreement of the parties for the change of circumstances. I made a finding -- a specific finding that there was a change of circumstances."

Keri now appeals the modification to the parenting plan here.

## III. ASSIGNMENTS OF ERROR

On appeal, Keri alleges, restated and consolidated, that the district court erred in finding that a material change in circumstances had occurred warranting an increase in Glenn's parenting time with Lakin and Azlee.

We note that Keri also assigns as error the district court's failure to grant her motion for new trial and her motion to alter or amend judgment. However, her assertions with respect to this assigned error merely reiterate her argument that the court erred in finding a material change in

circumstances warranting a change to the parenting plan. As such, our analysis and resolution as to that issue also resolve Keri's assigned error about her motion for new trial and motion to alter or amend judgment.

## IV. STANDARD OF REVIEW

Child custody determinations and parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002).

## V. ANALYSIS

On appeal, Keri asserts that the district court erred in modifying the original parenting plan because there is no material change in circumstances warranting any modification. In her brief on appeal, Keri focuses exclusively on the court's decision to increase Glenn's parenting time by granting him an additional six hours with the girls every other Sunday afternoon. However, the court actually modified the parties' parenting plan and, specifically, the parties' parenting time, in two respects. In addition to the court increasing Glenn's parenting time by granting him an additional six hours with the girls every other Sunday afternoon, the court also adjusted the right of first refusal by making it apply only when the possessory parent is unavailable to care for the girls overnight. In analyzing the court's decision to modify the parenting plan, we consider the net effect of these two changes to the parties' parenting time, rather than considering the increase in Glenn's every other weekend parenting time in isolation. And, upon our review, we affirm the district court's decision to modify the parties' parenting plan.

Parenting time rights established by a marital dissolution decree may be modified upon a showing of a material change in circumstances affecting the best interests of the children. *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2001). The party requesting the modification bears the burden of proving a material change in circumstances has occurred. *Parker v. Parker*, 234 Neb. 167, 449 N.W.2d 553 (1989).

In its order, the district court specifically held that a material change in circumstances had occurred since the entry of the decree in June 2010 which warranted the modifications to the parenting plan. The court did not, however, indicate what the material change in circumstances was. At the hearing on Keri's motion for new trial and motion to alter or amend the judgment, the court did clarify its finding about the material change of circumstances by explaining that the finding was not related to the parties' mediated agreement to make small changes to the parenting plan. But, the court failed to offer any further insight into what it did find was a material change in circumstances. We note that much of Keri's brief on appeal focuses on her perception that the

district court based its finding of a material change in circumstances on the parties' decision to make some alterations to the decree during their mediation. Keri's argument is disproven by the district court's comments detailed above. The court clearly indicated that its finding of a material change in circumstances was unrelated to the parties' agreement to modify certain aspects of the parenting plan during mediation. Accordingly, we do not address Keri's arguments in this regard any further.

At trial and in his brief on appeal, Glenn argues that there were multiple changes in the parties' circumstances which warranted the modifications to the parenting plan. Most notably, Glenn asserts that the parties fundamentally agreed that there had been a material change in circumstances warranting a change in the right of first refusal provision of the parenting plan. We agree with Glenn's assertion. In addition, we note that in Keri's brief on appeal, she does not challenge the court's finding that there was a material change in circumstances warranting a modification to the right of first refusal, nor does she assert the court erred in making this adjustment to the parenting plan.

The evidence presented at the hearing revealed that due to the significant changes in each of Glenn's and Keri's home life since the original decree was entered, the right of first refusal was no longer being consistently utilized, it was no longer completely necessary, and it was creating additional conflict between Glenn and Keri.

Keri testified that the parties initially included this provision in the parenting plan for the safety of the girls. At that time, both Glenn and Keri believed that if one of them had to be away during parenting time, it would be preferable for the girls to be with the other parent, rather than with a babysitter. Now, however, Keri is remarried and Glenn has a live-in girlfriend. As a result, when the possessory parent has to be away for any length of time, there is someone else in the home who can care for the girls.

Currently, Glenn and Keri do not agree on the manner in which the right of first refusal should be utilized. Keri testified that if she were going to be unavailable for a period of time, she would prefer to leave the girls with Chris. Glenn, on the other hand, testified that he believes it is important for the girls to be with Keri, rather than his girlfriend. He also indicated his belief that he should always be offered the chance to spend time with the girls when Keri is not available. The evidence presented at trial revealed that the parties' differing opinions about the right of first refusal is one point of contention between Glenn and Keri. Glenn believed that Keri was not utilizing the right of first refusal every time she was away for four or more hours. In fact, he indicated his belief that Keri would go out of her way to not have to utilize the right of first refusal. Furthermore, there was evidence that the growing conflict between Glenn and Keri, on this issue and other issues, was affecting the girls negatively. They were experiencing stress concerning their parents' relationship.

Given the changes in the parties' circumstances, the parties' ongoing conflict about the right of first refusal, and the effect of the parties' conflict on the children, we find that there has been a material change in circumstances warranting a modification of the right of first refusal.

The district court modified the right of first refusal such that it now applies only when the possessory parent will be unavailable to care for the girls overnight. The adjustment to the right of first refusal may well have an effect on the total amount of time that Glenn has with the girls. After the adjustment, Glenn's opportunities for additional parenting time are reduced because rather than

being entitled to such additional time whenever Keri will be away for a four hour time period, he will only be offered the additional time when Keri is absent overnight.

The court granted Glenn an additional six hours of parenting time with the girls every other Sunday afternoon. Presumably, this change was made to offset the parenting time he will probably lose as a result of the change to the right of first refusal. When we consider the modification to Glenn's every other weekend parenting time in conjunction with the adjustment to the right of first refusal, we cannot say that the district court abused its discretion in granting Glenn an additional six hours of time with the girls every other weekend. Because the change to the right of first refusal could have an effect on the parties' total parenting time, the court did not err in making other modifications to the parenting plan to account for these effects.

## VI. CONCLUSION

We affirm the district court's order which modified the parties' parenting plan by adjusting the right of first refusal such that it only applies when the possessory parent is unavailable to care for the girls overnight and by extending Glenn's parenting time by six hours every other weekend.

AFFIRMED.